BEEDLE, APPELLANT, *v.* CAROLAN, COUNTY ATTORNEY, RESPONDENT.

(No. 8407.)

(Submitted January 11, 1944. Decided April 12, 1944.)

[148 Pac. (2d) 559.]

*Mr. F. F. Haynes* and *Mr. Albert H. Angstman,* for Appellant, *Mr. Angstman* argued the cause orally.

*Mr. R. G. Wiggenhorn* and *Mr. T. W. Carolan* (*pro se*), for Respondent, *Mr. Wiggenhorn* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This appeal involves the question whether or not a written release given to one joint tort feasor releases the other tort feasor.

At the instance of defendant T. W. Carolan, the plaintiff Beedle was put in jail by sheriff Burns. Beedle was later released, and he thereafter brought suit against Burns for damages for false imprisonment. The suit was settled by Burns and his surety by a payment to Beedle of $1,000. A written release was

executed by Beedle. Then Beedle brought the present suit against the county attorney, Carolan, for damages for the imprisonment. Carolan and his surety set up the release executed in the consummation of the Burns case as a bar to the present action. The question framed by the pleadings and decisive of this case involves the interpretation of the release in the *Burns case*. The district court found the release to be in bar and gave judgment to the defendants.

The release in question is as follows:

"John Beedle, Plaintiff, vs. George E. Burns, individually and George E. Burns as the duly elected, qualified and acting Sheriff of Rosebud County, Montana, and United States Fidelity and Guaranty Company of Baltimore, Maryland, a corporation, Defendants.

"Release in Full of all Claims.

"In consideration of the payment of $1,000, to me, in hand paid by the United States Fidelity and Guaranty Company of Baltimore, Maryland, a Surety Corporation, and George E. Burns, Sheriff of Rosebud County, Montana, I do hereby release and forever discharge the said United States Fidelity and Guaranty Company of Baltimore, Maryland, a Surety Corporation, and George E. Burns, Sheriff of Rosebud County, Montana, from any and all actions, causes of action, and demands for, upon or by reason of any damage, loss or injury, which heretofore have been, or which hereafter may be, sustained by me, in consequence of the matters and things set forth and contained in the Amended Complaint, in the above designated action, now pending in the above entitled court; and the undersigned, in consideration of the receipt of said One Thousand Dollars hereby agree to file a dismissal of said action with full prejudice, and accept said sum of One Thousand Dollars, as complete compensation for all injuries sustained in connection therewith.

"It is further agreed and understood that said payment is not to be construed as an admission of any liability by the United States Fidelity and Guaranty Company of Baltimore, Maryland, a Surety Corporation, and George E. Burns, Sheriff of Rosebud

County, Montana, but it is a sum accepted in compromise of an asserted liability by me against them, and paid to me in settlement in lieu of trial of said above entitled action.

"In witness whereof, I have hereunto set my hand and seal the third day of January, 1942.

"John Beedle

"Street Address: Co. B. 753 GHQ.

"City and State, Fort Lewis, Washington."

The rule in this jurisdiction as to the effect of the release of ▆▆▆ one joint tort feasor on the claim against the other is that the intention of the parties to the release is the controlling element. In the case before us we have a release which does not expressly reserve the rights against the second party as was done in the *Black case,* 88 Mont. 256, 292 Pac. 577. This case is similar to the release in the case of *Lisoski* v. *Anderson,* 112 Mont. 112, 112 Pac. (2d) 1055, 1057. In that case we laid down the following rule: "* * * but the rule is that to save the right of recourse against other feasors, the release must be in the nature of a covenant not to sue or there must be words in the release which show that it is not in full satisfaction of the claim and that he does not thereby discharge the others from liability."

The release in question seems squarely within the rule stated in the *Lisoski case.* The release is captioned "Release in full of *all* claims," and while the language in the first portion is in the nature of a covenant not to sue, yet the latter part indicates full settlement—"said sum of One Thousand Dollars, as *complete compensation for all injuries sustained in connection therewith.*" (Referring to the arrest.) The words italicized above mean that plaintiff has been fully compensated for any injuries arising out of the transaction; having been fully compensated he has no further cause of action. Nothing in the release in any way hints at a reservation of the right to sue the county attorney or anyone else because of the false arrest and, as we have said, that reservation must appear on the face of the instrument.

It is contended that the tort liability here is governed by our statutes in regard to joint debtors, (secs. 7466, 9768 and 8598,

Rev. Codes), and that the judgment of the lower court is contrary to these statutes. If we should grant that these statutes are applicable to torts, yet they can have no application here since, even under their provisions, this release would necessarily operate as a release of both joint tort feasors.

The trial court found from its examination of the release that it was intended as a release of all claims against whomsoever by this plaintiff for injuries to him arising out of the arrest. This court takes the same view as to the effect of that release.

The judgment is affirmed.

Mr. Chief Justice Johnson and Associate Justices Anderson, Morris and Adair concur.

On Petition for Rehearing.
PER CURIAM.

The petition for rehearing is hereby denied. But since Mr. Justice Morris now desires to recede from his concurrence to the opinion and to add a dissent, it is hereby ordered that the court's decision be published as originally promulgated, and that the said dissent be added under the heading ''Dissent added by order of court upon denial of petition for rehearing.''

Dissent Added by Order of Court upon Denial of Petition for Rehearing.

Mr. Justice Morris.

I dissent. This court's opinion was grounded chiefly on two former decisions of this court: *Black* v. *Martin*, 88 Mont. 256, 292 Pac. 577, and *Lisoski* v. *Anderson*, 112 Mont. 112, 112 Pac. (2d) 1055, 1056. On further consideration I am convinced that there is a material difference between those cases and this. In the *Black case* it was held that whether or not the release of one tort-feasor in a compromise settlement released a joint tort-feasor was governed by the intention of the parties as shown by their written compromise agreement.

The compromise settlement, of course, was a contract to be interpreted according to the statutory rules relative to interpreta-

tion of contracts. (Chapter 108 of the Civil Code, Rev. Codes 1935, sec. 7526 et seq.)

The *Lisoski case* assumed to follow the *Black case*. In the petition for rehearing it is contended that the case at bar departs from the rule followed in both the cases mentioned above. It is my view that this case is in harmony with the *Black case* in so far as the facts in the two cases have any similarity. But I think that neither of the two cases sustains the case at bar. This appears clear from a comparison of the provisions of the compromise agreement in the respective cases. The agreement in the *Lisoski case* is much more comprehensive than that in the case at bar. It provides:

" 'I * * * have released and discharged, and by these presents do for myself, my heirs, executors, administrators and assigns, release and forever discharge the said Glasgow Motors, Inc., and all other persons, firms or corporation from all claims, demands, damages, actions or causes of action, on account of bodily injuries and/or death, and/or damage to property resulting, or to result, from an accident to me which occurred on or about the 1st day of November, 1936 * * * and of and for all claims or demands whatsoever in law or in equity, which I, my heirs, executors, administrators or assigns can, shall or may have by reason of any matter, cause or thing whatsoever prior to the date hereof.

" 'It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected.' "

There, as here, there was one plaintiff and a number of defendants; one defendant entered into a compromise settlement with the plaintiff, and paid her a substantial amount in consideration of such settlement, and the parts of the opinion quoted above are excerpts from that contract of settlement.

The terms of that agreement are all inclusive. It names the party defendant in the action, and then goes on to include "all other persons, firms or corporation," exempting them "from all claims, demands, damages, actions or causes of action * * * on

account of bodily or property injury." The plaintiff's heirs, executors, administrators, etc., were included, and finally the agreement then adds the clause "this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected." Such an agreement leaves no ground for doubt as to the intention of the parties and brought that case as to intention clearly within the rule of the *Black case*. Quite the contrary is true as to the compromise agreement in the case at bar. The contract here is limited to the signatory parties. It releases the sheriff and his surety only.

Contracts must be interpreted as provided by statutes. The following sections are applicable here:

"7532. The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."

"7539. However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."

"7540. If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."

With these sections of the statutes as a guide, and with the provisions of the compromise agreements set out in the *Black* and *Lisoski cases*, supra, in mind, let us interpret the compromise agreement under consideration. It is elementary, of course, that in interpreting a contract and applying its terms to the parties thereto, no parties other than those to the contract may be considered. The defendant in the case at bar was not a party to the agreement we are now considering. Glancing at section 7532, Revised Codes, above, we find that no contract is correctly interpreted unless it is taken and considered as a whole. It has been said by this court that "the contract must be viewed from beginning to end, and all its terms must pass in review; for one clause may modify, limit or illuminate the other." (*State* v.

*Rosman,* 84 Mont. 207, 217, 274 Pac. 850, 853; see, also *Cobban Realty Co.* v. *Donlan,* 51 Mont. 58, 65, 149 Pac. 484; *Roecher* v. *Commercial Nat. Bank,* 87 Mont. 570, 582, 289 Pac. 388; *Lyon* v. *Dailey Copper, etc., Co.,* 46 Mont. 108, 120, 126 Pac. 931; *State Bank of Darby* v. *Pew,* 59 Mont. 144, 155, 195 Pac. 852; *Kasun* v. *Todevich,* 71 Mont. 315, 319, 229 Pac. 714; *Union Central Life Ins. Co.* v. *Jensen,* 74 Mont. 70, 76, 237 Pac. 518; *Brown* v. *Homestake Exploration Co.,* 98 Mont. 305, 326, 39 Pac. (2d) 168; *Snider* v. *Carmichael,* 102 Mont. 387, 409, 58 Pac. (2d) 1004.)

Proceeding under the rule laid down in the foregoing cases, it becomes obvious that the lower court gave full faith and credit to the first paragraph of the compromise agreement made and executed between Beedle and sheriff Burns, and the latter's surety, but failed entirely to give any effect to the last paragraph of the agreement wherein we find that Beedle expressly states that he releases Burns and his surety, the United States Fidelity & Guaranty Company, in consideration of the $1,000 paid to him by *them.* Failure of the trial court to give any effect to the last paragraph of the compromise agreement is in clear violation of sections 7532 and 7540, supra, and of the numerous cases cited above relative to their interpretation.

By construing the two paragraphs of the compromise agreement together, we arrive at a reasonably clear intention of the parties when the agreement is measured by the statutory rules. Section 7540, supra, requires particular consideration in the premises. It says in effect that when any contract is ambiguous it "must be interpreted in the sense in which the promisor believed * * * that the promisee understood it." If Beedle intended to release the defendant in the case at bar, or if the sheriff believed Beedle intended to release any others than those named in the agreement, particularly the defendant in the case at bar, it would have been a simple matter to have inserted Carolan's name in the agreement, or employed the all inclusive provisions of the compromise agreement mentioned in the *Lisoski case* and thereby avoided any liability on the part of Carolan and his surety by express inclusion of their names along with the name of the

sheriff and his surety. Why were they not expressly included in the agreement if there was any intention to exempt them from liability? Obviously sheriff Burns and his surety, the United States Fidelity & Guaranty Company, were looking after their own liability and were not concerned about the liability of county attorney Carolan and his surety, the Maryland Casualty Company. I can find no law nor any reasonable grounds to justify this court in spreading the mantle of protection created by the compromise agreement made and entered into between the parties to that agreement and any other person or corporation not a party to nor mentioned in such agreement, such as the county attorney and his surety. I do not think that the surety for the sheriff has any right to claim contribution from the surety of the county attorney under section 8206, Revised Codes, or under sections 477 and 491 thereof:

"8206. A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended, and also to require all his cosureties to contribute thereto, without regard to the order of time in which they became such."

"477. When the penal sum of any bond required to be given amounts to more than one thousand dollars, the sureties may become severally liable for portions not less than five hundred dollars thereof, making in the aggregate a liability of double the amount named as the penal sum of the bond. And if any such bond becomes forfeited, an action may be brought thereon against any or all of the obligors and judgment entered against them, either jointly or severally, as they may be liable. The judgment must not be entered against a surety severally bound for a greater sum than that for which he is specially liable by the terms of the bond. Each surety is liable to contribute to his co-sureties in proportion to the amount for which he is liable."

"491. Whenever the sureties on either bond have been compelled to pay any sum of money on account of the principal obligor therein, they are entitled to recover in any court of com-

petent jurisdiction of the sureties on the remaining bond a distributive part of the sum thus paid, in the proportion which the penalties of such bonds bear one to the other and to the sums thus paid, respectively.''

There is no privity between the surety for the sheriff and the surety for the county attorney, and no legal liability for contribution the one from the other.

I think there is a further reason why a right of action against the defendant was not affected by the agreement between Beedle and the sheriff and the latter's surety: Malice is always an element properly taken into account in fixing the amount of damages in actions for false imprisonment. (*Johnson* v. *Bonton,* 35 Neb. 898, 53 N. W. 995; *Thorp* v. *Carvalho,* 14 Misc. 554, 36 N. Y. Supp. 1; *Rich* v. *McInery,* 103 Ala. 345, 15 So. 663, 49 Am. St. Rep. 32; *Southern R. Co.* v. *Shirley,* 121 Ky. 863, 90 S. W. 597, 12 Ann. Cas. 33; *Rice* v. *Gray,* 225 Mo. App. 890, 34 S. W. (2d) 567, 571.) The complaint alleges the acts of the county attorney in having Beedle arrested and placed in jail were done wrongly and wilfully, and punitive damages as well as actual damages are demanded. I think the alleged offense of the county attorney was separate and distinct and involved elements other than such as could be properly charged to the sheriff, such as malice. I think the plaintiff was entitled to be heard on his allegations relative to both general and punitive damages; that for the reasons stated the defendant was not entitled to immunity from prosecution for the acts alleged, and that the court was in error in sustaining the motion for judgment on the pleadings.

The judgment should be reversed and the cause remanded with instruction to overrule the motion for judgment on the pleadings.

Rehearing denied May 5, 1944.